IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **LUCAS HORTON,** | **§** | |
| **Plaintiff,** | **§** | |
| | **§** | |
| **v.** | **§** | **CASE NO. 3:22-cv-631-E-BN** |
| | **§** | |
| **Sunpath, LTD** | **§** | |
| **Defendant.** | **§** | |

**PLAINTIFF'S RESPONSE TO DEFEFENDANT'S MOTION TO DISMISS**

**TABLE OF AUTHORITIES**


*Baldridge v. Sunpath, Ltd.*, 21-cv-3629, 2022 (S.D. Tex. Mar. 4, 2022)……………………………….4,9,20

*Barr v. American Association of Political Consultants, Inc*., 140 S. Ct. 2335, 2346 (2020)………….18

*Bates Energy Oil & Gas v. Complete Oilfield Servs*., 361 F. Supp. 3d 633, 648 (W.D. Tex. 2019)……………………………………………………………………………………………………………………8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………………………………………………6

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)……………………………………………6

*Callier v National Car Cure LLC, Sunpath LTD*, et al, 3:2020-cv-00106 (W.D Tex. April 20, 2020)………………………………………………………………………………………………………5,10,11,13,20

*Cano v Assured Auto Group, Sunpath Ltd., and Northcoast Warranty*, 3:20-cv-3501-G, (N.D. Tex. Jul. 2021)………………………………………………………………………………………………………………5,10,11

*Creasy v. Charter Communs., Inc*., No. 20-1199 SECTION "F", 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020)……………………………………………………………………………………………………18

*Cunningham v. Radius Global Solutions LLC,* 4:20-cv-00294 (E.D. Tex April 9, 2020)………………….7

*Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017)……………………………………………………………………………………………………………7

*Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 126 (N.D. Tex. 2020)

*Haynes v. Kerner*, 404 U.S. 519, 520-21;……………………………………………………………………………4

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073-1074, 2019 U.S. App. LEXIS 8597, *9-10 (9th Cir. 2019)……………………………………………………………………………………………2

*Herman v. Cataphora, Inc*., 730 F.3d 460, 464 (5th. Cir. 2013) (citations omitted)…………………….8

*Horton v. Multiplan Inc.*, 3:21-CV-1542-S-BK (N.D. Tex. Nov. 24, 2021)………………………………….4,6

*Horton v Northcoast Warranty Inc.,* 3:2020cv03626 (N.D. Tex. Dec. 11, 2020)……………………….10

*Horton v. Sunpath, Ltd.*, Civil Action No. 3:20-CV-1884-B-BH (N.D. Tex. Feb. 16, 2021)……………..10

*ITL Int'l, Inc. v. Constenla*, S.A., 669 F.3d 493, 498 (5th Cir. 2012)……………………………………………..8

*Johansen at 587 quoting Kristensen v. Credit Payment Servs., Inc*., No. 1:12-cv-00528, 2015 U.S. Dist. LEXIS 96036, 2015 WL 4477425……………………………………………………………………………16

*Johnson v. City of Shelby*, 135 S. Ct. 346 14……………………………………………………………………6

*Lindenbaum v. Realgy*, Case No. 1:19-cv2862 (N.D. Oh. 2020)…………………………………………….19

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)……………………………………………………………………6

*Martin v. Leading Edge Recovery Sols., LLC*, No. 11 C 5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10,
2012)……………………………………………………………………………………………………………………7

*Mark D. Guidubaldi & Assocs., LLC*, 2019 WL 1119365, at *3……………………………………………………4

*Matthews v. United Healthcare Servs*., Civil Action No. 3:19-CV-01212-E, 2020 U.S. Dist. LEXIS 164082, at *7 (N.D. Tex. Sep. 9, 2020)……………………………………………………………………………8

*McCurley v Royal Seas Cruises, Inc*., Case No. 21-55099, 2022 U.S. App. LEXIS 9079 (9th Cir. April 5,
2022)…………………………………………………………………………………………………………………..15

*Mims v. Arrow Fin. Servs*., LLC, 565 U.S. 368, 372 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227)……………………………………………………………………………………7

*Montelongo v. My Fin Sols. LLC*, 2020 U.S. Dist. LEXIS 5755, 2020 WL 2100814 (W.D. Tex. 2020)..2

*Morales v. SunPath Ltd.*, C. A. 1:20-cv-01376-RGA-MPT (D. Del. Feb. 1, 2022)…………………7,11,20

*Morris v. Unitedhealthcare Ins. Co*., 415CV00638ALMCAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016)……………………………………………………………………………………………………7

*Murray v. Choice Energy, LLC*, No. 1-15-cv-60, 2015 U.S. Dist. LEXIS 89913, 2015 WL 4204398…16

*Rogers v Sunpath Ltd. et al,* 4:22-CV-01051 (S.D. Tex. Mar. 31, 2022)………………………………5,11,12

*Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96 (5th Cir. 2018)……………………………11
*Shabana Hussain v. Sullivan BuickCadillac-GMC Truck, Inc.*, et al., 5:20-cv-00038 (M.D. Fla. Dec. 11, 2020)……………………………………………………………………………………………………………………19
*Smith v. State Farm. Mut. Auto. Ins. Co.*, 30 F. Supp. 3d at 779 (N.D. Ill. 2014)………………………16
*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004)……………………………………………………………………6
*Thomas v. Life Protect 24/7 Inc.*, No. 4:20-cv-03612, 2021 U.S. Dist. LEXIS 171881 (S.D. Tex. Sep. 10, 2021)……………………………………………………………………………………………………………………16
*Wasica Fin. GmbH v. Schrader Int'l, Inc.*, C.A. No. 13-1353-LPS, 2018 WL 4502178……………………6
*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017)………………………7
*Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)……6

**STATUTES AND RULES**

*Rules Implementing the Tel Consumer Prot. Act of 1991*, 30 FCC Rcd. At 7979-80
TEX. BUS. & COMM. CODE § 302
FED. R. CIV. P. 12(b)
May 9th, 2013 FCC Declaratory 28 FCC Rcd. 6574 (8)

**INTRODUCTION**

It is ironic that the Defendant calls the Plaintiff a serial litigator when they are serial robocallers that have been named in more complaints than the Plaintiff has filed, which is fewer than the Defendant claims. The Plaintiff has been called names like this before, but the Courts have ignored it. As they should. If a person is assaulted 30 times, are they not entitled to relief for each assault? The Plaintiff is assaulted daily by unwanted callers and he is only asserting his right under the law to hold these unscrupulous companies accountable.

If anyone is to blame for this situation, it is the Defendant for their hideous record of harassing consumers with unwanted calls. Despite that, the legal definition of a serial litigator does not apply here. All of the lawsuits filed against the Defendant were separate and appropriate. And they were all

based on hard evidence of telemarketing and TCPA violations. That we are in the ND of Texas again with the facts of this complaint is solely due to the Defendant's actions.

In *Horton v Multiplan*, the Court wrote, "The Court has squarely rejected the argument that because prolific filers turn telephone solicitations into money makers, they are not harmed and thus cannot bring a TCPA suit. *Hirsch v. USHealth Advisors, LLC*,. That a plaintiff has filed numerous TCPA claims does not alone divest that plaintiff of standing to sue. Id. (providing that, "[e]ven if a plaintiff may justifiably be called a 'professional TCPA plaintiff,' this designation does not strip away his Article III standing," especially when he asked to be put on a "Do Not Call" list and never called the defendant back); *Mark D. Guidubaldi & Assocs., LLC*, 2019 WL 1119365, at *3".

The Defendant starts off by pointing out that, "The filing of the State Court Lawsuit came less than thirty days from the dismissal of his most recent lawsuit against Sunpath in this Division, under Case No. 3:22-cv-02130-N-BT" However, this was because of the Defendant's actions. Case no. 3:22-cv-02130-N-BT was dismissed by the Plaintiff at the Defendant's prodding because it did not reach the $75K threshold for Diversity complaints. So, the Plaintiff dismissed the complaint and refiled in County Court. The Defendant proceeded to file a Special Appearance motion. However, when the Plaintiff responded with the evidence necessary for the court to exert personal jurisdiction over the Defendant, they moved the same case back to this court. In doing so, they fraudulently changed the demand to satisfy the 75K threshold for diversity complaints. The Defendant is also incorrectly claiming to be sued under a Federal Statute. This complaint is wholly a State matter.

It is fraudulent for the Defendant to claim no involvement in making calls to consumers. This lie, made in sworn statements by the Defendant's President, Andy Garcia, is that the Defendant has nothing to do with the selling of their warranties. See Exhibit A. This was proven to be a untrue in 4

cases heard in 3 Texas District Courts, with agreements being unsealed showing that the Defendant does indeed exert authority over the callers selling their warranties. They are:

1. *Baldridge v. Sunpath, Ltd.*
2. *Cano v Assured Auto Group, Sunpath Ltd., and Northcoast Warranty*
3. *Rogers v Sunpath Ltd. et al,*
4. *Callier v National Car Cure LLC, Sunpath LTD*, *et al*,

In all four of these cases, personal, specific, and subject matter jurisdiction were exercised over the Sunpath. The facts of those cases are either identical or very similar to this complaint, so it is unclear why the Defendant thinks it will work this time.

The Defendant is a motor vehicle warranty company based in Massachusetts, but is registered to do business and regularly conducts business in the State of Texas. They cause outbound telephone calls to be made using Texas area codes, including area code "214" and solicited business from Plaintiff, a Texas Resident, numerous times. The Defendant's main strategy for telemarketing is the hiring of call centers to place calls on its behalf using automatic telephone dialing system and automated/pre-recorded voice. They enter into contracts with telemarketing vendors through agreements referred to as Call Center Marketing Agreements ("CCMA's). In these CCMA's, the Defendant's vendors are required to act as fiduciaries toward Sunpath. Sunpath exercises a substantial amount of control over its vendors. They limit the names the vendors can use for their businesses, the phrases the vendors can use when selling Sunpath warranties, dictate the tone of voice in which Sunpath's vendors can speak when selling Sunpath Warranties and require vendors to meet certain staffing requirements when selling Sunpath warranties. Sunpath's vendors receive compensation based on the quantity of Sunpath warranties sold. Sunpath acts as a principal, and its call center vendors act as its agents.

## LEGAL STANDARD

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig*. The Court may grant such a motion to dismiss only if, after accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief. See *Maio v. Aetna, Inc*. Here, because Plaintiff proceeds pro se, the Court construes the allegations of his complaint liberally. See *Haynes v. Kerner*. Not only should the Plaintiff be able to utilize discovery to uncover evidence that supports the claims he can't prove at this stage, but he is definitely entitled to relief under the Tex Bus. & Comm. Code 302 ("TX 302") for the calls made on behalf of the Defendant.

To withstand a motion to dismiss, the plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*. There is more than substantive plausibility that the Defendant is directly involved in the illegal calls made to the Plaintiff. A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

A complaint survives a motion to dismiss where the allegations raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact). *Victaulic Co. v. Tieman*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. See *Wasica Fin. GmbH v. Schrader Int'l, Inc.*. The Plaintiff's complaint here does more than show a sheer possibility that the Defendant has acted unlawfully and he should be given the pro se

leeway in this court as well. See *Horton v Multiplan.*

The Plaintiff satisfies Federal Rule of Civil Procedure 8(a)(2) with paragraph 35 of his complaint. Those damages are very real and courts have agreed. In *Van Patten v. Vertical Fitness Group*, LLC, the Ninth Circuit reasoned that the TCPA represents Congress's establishment of "the substantive right to be free from certain types of phone calls and texts absent consumer consent" and that Congress "identified unsolicited contact as a concrete harm,". The Defendant has vicariously contacted the Plaintiff with unsolicited calls at least 20 times if you combine this complaint and the calls from *Morales v. SunPath Ltd.*

In *Cunningham v. Radius Global Solutions LLC*, the Eastern District of Texas found that a single missed call constituted concrete harm, writing:

> "Courts considering harm in connection with TCPA claims have noted that 'one of the purposes of the TCPA was to protect telephone subscribers from the 'nuisance' of unwanted calls.'" *Morris v. Unitedhealthcare Ins. Co*., 415CV00638ALMCAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016), report and recommendation adopted, 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) (Mazzant, J.) (citing *Martin v. Leading Edge Recovery Sols., LLC*, No. 11 C 5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) ); see also *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) ("Unwanted telemarketing can be a 'nuisance' and 'an intrusive invasion of privacy.' ") (quoting *Mims v. Arrow Fin. Servs*., LLC, 565 U.S. 368, 372 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227) ). "In Martin, the district court analyzed whether the plaintiffs TCPA claims satisfied the injury-in-fact requirement of Article III. The district court found an injury-in-fact when the plaintiffs alleged they were forced to tend to unwanted calls—a privacy interest which Congress sought to protect." Id. (citing, 2012 WL 3292838, at *2; In re *Rules Implementing the Tel Consumer Prot. Act of 1991*, 30 FCC Rcd. At 7979-80)."

That the Plaintiff was called illegally in violation of the TX 302 and suffered concrete harm is more than speculation or allegation. It is fact that is supported by the warranties he purchased directly from the Defendant as well as the ones he purchased from companies that were under the direction of the Defendant.

**THE COURT HAS JURISDICTION OVER SUNPATH**

As previously mentioned, lack of jurisdiction is the Go To defense for the Plaintiff. The Defendant hires other companies to make the sales calls for their warranties and then claims to have nothing to do with the calls. In this complaint, the Plaintiff has purchased warranties from the Defendant itself (see Exhibit B), National Car Cure (see exhibit C), and Auto Defender (See Exhibit D), after he was robocalled by the Defendant or its representatives. But whomever made the calls, the Defendant was ultimately responsible for them.

For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Matthews v. United Healthcare Servs*. Where the plaintiff alleges specific jurisdiction, the Fifth Circuit applies a three-step analysis: (1) "minimum contacts by the defendant purposefully directed at the forum state"; (2) "nexus between the defendant's contacts and the plaintiff's claims"; and (3) "that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla*. All 3 of those criteria have been met here.

Specific jurisdiction is appropriate only where the defendant "purposefully availed itself to the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum

state's laws," and it "may arise incident to the commission of a single act directed at the forum." *Herman v. Cataphora, Inc.*,(citations omitted); see, e.g. *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, (noting the long-standing Fifth Circuit principles that committing a tort in whole or in part in Texas will give rise to specific jurisdiction here). Here, we have far more than 1 single act that directed at the forum.

In *Montelongo v. My Fin Sols. LLC*, the Western District of Texas found, a Defendant in a TCPA matter purposefully availed itself to Texas by calling a Texas area code, and that such activity created a Texas interest in adjudicating the matter:

> "Accepting Montelongo's allegations as true, that she received three phone calls from Caposio's direct line after she requested no further calls, Caposio has accepted the benefits of doing business in Texas and is subject to this TCPA action in this forum because the litigation relates to Caposio's conduct in this forum. When the record demonstrates that a defendant has sufficient minimum contacts with a forum, a court must deny a Rule 12(b)(2) motion to dismiss unless the defendant makes "a compelling case that the presence of some other consideration would render jurisdiction unreasonable. Caposio's argument is not compelling."

In *Baldridge v. Sunpath, Ltd*, the court wrote, "Based on the evidence presented, the Court finds Baldridge established Texas has personal jurisdiction over SunPath and adequately pleaded facts sufficient to support his claims.". This was after discovery was ordered and a sealed CCMA between the caller and Sunpath was turned over to the Plaintiff. The facts of this case are almost identical to to *Baldridge*. And Counsel for the Defendant knows this because he represented the Defendant in that case as well.

Part of one of these CCMA's was introduced in an exhibit in a filing by the Sunpath in *Baldridge*, which they then sought to exclude as part of the greater CCMA. In this document, it is plainly evident that the Defendant does indeed exert almost total control over the sellers of their warranties. See Exhibit E. Diccovery would reveal this or similar agreements between the Defendant and the callers.

In *Cano v Assured Auto Group, Sunpath Ltd., and Northcoast Warranty*, the Court, citing *Callier v SunPath Ltd* at *3 wrote that, "sensitive to Plaintiff's limited ability to discern the identity of the telemarketing firm responsible for contacting him and the nature of its relationship with SunPath and Northcoast without discovery, the court ordered " limited jurisdictional discovery for the purpose of investigating whether this court has specific jurisdiction. . . ." Id. Specifically, the court ordered the production of either the contracts or other related documents describing the relationship between SunPath and Northcoast and their purported agent See id. at 5." The Court proceeded to order the same discovery as ordered in *Callier* and an agency relationship between Sunpath and the callers was established.

In discovery, the plaintiff's counsel took the deposition of Sunpath's corporate representative and obtained a CCMA that dictated the relationship between Sunpath and its telemarketer. The Plaintiff then filed the CCMA under seal as an exhibit to the Second Amended Complaint. (See Id.; See 3:20-CV-3501-G, Doc. No. 34). After Plaintiff attached the CCMA and described the relationship between Sunpath and its telemarketer, Sunpath effectively conceded the agency relationship existed with its telemarketer and instead filed an answer. They later settled the case.

The Defendant notes that the Plaintiff is part of a in Delaware lawsuit against the Defendant and Northcoast Warranty. This is only because Judge Garcia granted Sunpath's motion to dismiss for lack of personal jurisdiction in 3:20-CV-1884 and 3:2020cv03626. The court was wrong, but the

decision was made based on an ineffective argument made by the Plaintiff at the time. Luckily, the Plaintiff stumbled upon an attorney who already had an existing case against the Defendant and was able to join it. See *Morales v. SunPath Ltd*.

Had the Plaintiff been a more seasoned litigant in his complaint against Sunpath and Northcoast, he would have been able to establish that personal jurisdiction was warranted as *Cano* and *Callier* did because the calls made to the Defendant in the complaint were made at the same time as the Northcoast calls to the Plaintiff.

In *Rogers v Sunpath Ltd. et al*, the court wrote,

> "Texas may be an inconvenient forum for SunPath, but Texas has an interest in litigation enforcing its telephone consumer protection laws, and Plaintiff would be inconvenienced if required to litigate his claims in SunPath's preferred state…the state's shared interest arguably points in Plaintiff's favor because enforcement of consumer protection laws could be frustrated if plaintiffs as a group were forced to travel to the defendant's preferred state. SunPath presents no arguments why personal jurisdiction would be unfair other than its argument that it has no minimum contacts with Texas. But as explained above, Plaintiff has established a prima facie case that the calls can be imputed to SunPath. SunPath has failed to make a "compelling case" that personal jurisdiction would be unreasonable. *Sangha*, 882 F.3d at 102. Because SunPath has minimum contacts with Texas related to the alleged calls and because exercising personal jurisdiction is reasonable**,** SunPath's motion to dismiss will be denied. "

This decision was based in part on a sealed copy of a CCMA between National Cure and the Defendant in which Sunpath placed many restrictions on the National Car Cure such as the sales scripts they had to use, a requirement to record calls, and a stipulation that Sunpath could

audit National Car Cure at any time. The calls made by National Car Cure to Mr. Rogers were made from Aug. 2019 to May 16th, 2020, which coincides with the date (Sep. 25, 2019) that the Plaintiff purchased a warranty from National Car Cure. So the CCMA unsealed in *Rogers v Sunpath* between the Defendant and National Car Cure would have been in effect when the Plaintiff bought his warranty from the National Car Cure. Because these cases are almost identical and the calls were made when National Car Cure had a CCMA with the Defendant, this motion must be denied as it was in *Rogers V Sunpath* and jurisdiction should be exercised.

In this instance, SunPath and NCC called Plaintiff's cell phone (National Car Cure directly, and SunPath vicariously) and sent Plaintiff a warranty contract in the mail to his address, subjecting themselves to the personal jurisdiction of this District. Furthermore, SunPath contracted with National Car Cure, which used Texas area codes, to make calls. Those facts alone are sufficient to establish personal jurisdiction over the Defendant. Not to mention that they did the exact same thing with the 2 other companies that the Plaintiff purchased warranties from.

Given that the Defendant filed an answer to the complaint, it is clear Defendant agrees that the parties calling Plaintiff's phone from 214, 512, and 254 area coded phone numbers availed itself to Texas courts. The dispute lies as to whether the party for whom the calls were made is also subject to personal jurisdiction of this Court. For the reasons stated below, the answer to that is clear. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Declaratory Ruling 28 FCC Rcd 6574 (8) (internal citations omitted).

Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107 However, The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593. The Defendant hired, permitted, and enjoyed the benefits of its agents, call centers and vendors' mass robocalling. Sunpath acted as the principal, and its agents, including but not limited to National Car Cure, acted as its agents. Sunpath is not permitted under the law to outsource and contract its way out of liability by

directing and benefitting from the unlawful robocalls made by its agents, call centers and vendors.

In *Callier v Sunpath Ltd* (citations omitted), the Court wrote that,

> "To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." Alternately, apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal. Finally, a principal may be liable on the theory of ratification if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances."

Ratification is the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency, § 4.01(1) (2006). A principal ratifies an act of an agent by "manifesting assent that the act shall affect the person's legal relations" or by "conduct that justifies a reasonable assumption that the person so consent." Id. § 4.01(2). Further, a principal may ratify an act only "if the actor acted or purported to act as an agent on the person's behalf." Id. § 4.03.

A principal can ratify the acts of a third party through "willful ignorance" as well. "Under the willful ignorance theory, the principal may not know the material facts, but has ratified with awareness that such knowledge was lacking. In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway." *Henderson v. United Student Aid Funds, Inc.*. Liability

under the TX 302 on ratification arises when a seller "ratifies [the unlawful acts] by knowingly accepting their benefits"—for example, "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." Sunpath ratified each of these calls when accepting the monetary benefits of the warranty sales.

In *McCurley v Royal Seas Cruises, Inc*., the court wrote that, "[Defendant] had knowledge of facts that would have led it to investigate [third-party lead generator's] lead generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by [third-party lead generator's] calls with scant investigation", the court recognized that a combination of the facts of the case, in addition to the "widespread TCPA violations in the cruise industry", supported a finding that a reasonable jury could find that the Defendant ratified the TCPA violations of its third-party lead generator.[1]

Car warranty sellers are worse than the cruise industry. In fact, telemarketing calls selling extended warranties have become so prolific and disruptive to the lives of American consumers that the Federal Trade Commission ("FTC") has issued a press release warning consumers to "slam on the brakes" and "hang up" on those callers. See Federal Trade Comm'n, Hang up on auto warranty robocalls.[2] This case and McCurley both involved a company (here Sunpath) accepting and continuing to accept leads generated through unlawful calls, and therefore ratify the violations of their lead generating/telemarketing agents through their willful ignorance.

---

[1] The 9th Circuit in McCurley confirmed a lack of apparent and actual authority. Here, there is a sufficient basis for both apparent and actual authority between Sunpath and the callers in this complaint. Plaintiff's reliance on McCurley is for the theory of ratification only.

[2] https://consumer.ftc.gov/consumer-alerts/2021/05/hang-auto-warranty-robocalls

> “Courts have found that “[t]o be liable…for TCPA violations under a ratification theory, ‘the principal must either (1) have actual knowledge of all material facts about the agent’s act or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further.” *Johansen at 587 quoting Kristensen v. Credit Payment Servs., Inc*., No. 1:12-cv-00528, 2015 U.S. Dist. LEXIS 96036, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015)(quoting Restatement (Third) of Agency § 4.01 cmt. b); see also *Smith v. State Farm. Mut. Auto. Ins. Co*., 30 F. Supp. 3d at 779 (N.D. Ill. 2014) (same); *Murray v. Choice Energy, LLC*, No. 1-15-cv-60, 2015 U.S. Dist. LEXIS 89913, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (citing Restatement (Third) of Agency § 4.06)”

With the number of times the Defendant has been sued, they would have to know that their agents are making illegal calls, yet they do nothing about it. This makes them guilty of both 1 & 2 from above.

In all four of the cited Texas cases, in 3 different courts, discovery was ordered that revealed CCMA’s showing an agency relationship between the Defendant and the callers and personal jurisdiction was exercised. Because the calls received by the Plaintiff were done so during the same time periods and were made by some of the same companies as the Plaintiffs in these cases, the outcome would be the same. Besides, common business sense would dictate that the Defendant isn’t just letting any company who wants to sell their products in any way possible without some sort of agreement and direction.

In *Thomas v. Life Protect 24/7 Inc*., the Court rejected an argument similar to that used by SunPath that the act of placing phone calls to the State of Texas created contacts insufficient to give rise to personal jurisdiction.

> “Here, Life Protect (allegedly) engaged in the very business practice specifically condemned by Congress—calling numbers robotically at random. And by doing so, Life Protect knew full well that it was using cellular and wire lines intended to go far beyond its home state. In this instance, wherever it reaches a

> consumer with a robocall, Life Protect has purposefully availed itself of that state's laws. That it didn't know precisely where its intentional, externally directed contact would land with each dial of the phone is no reason to deprive a federal court of personal jurisdiction where its calls did, in fact, land.
> But minimum contacts sufficient to establish personal jurisdiction exist here. Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches.""

*Thomas*.,2021 U.S. Dist. LEXIS 171881, at *23-24 (internal citations omitted).

Conversely, in cases where the courts found they did not have personal jurisdiction over defendants in TCPA cases involve calls where it was not apparent they would reach Texas residents. See e.g. *Cantu v. Platinum Mktg. Grp*., LLC, No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824, at *8-9 (S.D. Tex. July 13, 2015) ("Cantu cites no evidence showing that Platinum knew that a call to a cell phone number having an area code associated with Texas was as likely to reach a Texas resident a letter sent to a Texas address or a garnishment action direct at a Texas resident would be.").

Sunpath repeatedly called the Plaintiff on his "214" area code cell phone associated with the Dallas area in Texas. Furthermore, Sunpath went a step further and utilized various Texas area numbers itself to call the Plaintiff from. This is called spoofing. The FCC defines it as, "when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity. Scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust."[3] This shows a conscious effort to market to Texas consumers because the Defendant wanted to make it look like the calls are coming from local numbers. Consequently, the Defendant solicited business from the Plaintiff while he was in

[3] https://www.fcc.gov/spoofing

Texas and encouraged a Texas resident to purchase a warranty on numerous occasions. Because of this, the Defendant availed itself to Texas and the Complaint sufficiently pleads as such. Given that Sunpath availed itself to Texas by calling a Texas-based consumer on a Texas-area-code phone and used a Texas area code itself for the purpose of obtaining business from a Texas resident, it would in no way offend the notions of fair play and substantial justice to exercise personal jurisdiction over Sunpath.

The Defendant calls the Plaintiff a "serial litigator" as if it is a pejorative term when dealing with Robocallers. The Plaintiff is proud to be part of a movement trying to stop these harassing calls and hold the offenders liable. However, if companies like the Defendant would adhere to the law, we would not be in this situation, so the blame falls on the Defendant. The FCC has named car warranties as the number 1 area of complaints for robocalls[4]. And Sunpath is one of the worst robocallers in the country as they administer warranties sold by at least 10 companies that the Plaintiff knows of. They are:

1. National Car Cure
2. Northcoast Warranty
3. Auto Defender
4. Affordable Car Cure
5. Vehicle Protection Specialists
6. Celtic Marketing
7. Assured Auto Group
8. GQ Solutions
9. Axis Auto Protection
10. AM protection

A Pacer search will reveal that Sunpath is named as a Defendant in 53 TCPA lawsuits for warranties sold by these companies. See Exhibit F. So, it would be more apt to call the Defendant a "serial robocaller" than to point the finger at the Plaintiff for exercising his right to hold robocallers accountable under the law. A lack of personal jurisdiction is the Go To defense for the Defendant as they try to hide behind the claim that they not actually make any calls and have no ties to the states they are calling. However, if the Defendant has more than 10 companies selling their products, then they should be at home in any state they sell warranties

[4] https://www.fcc.gov/data-spotlight-top-robocall-complaints-2021

in. Pursuant to Federal Rule of Evidence 201, the Plaintiff requests that the Court take judicial notice of the foregoing facts.

The Defendant's invocation of *Barr v. American Association of Political Consultants, Inc*., 140 S. Ct. 2335, 2346 (2020); *Creasy v. Charter Communs., Inc*; *Lindenbaum v. Realgy*; and *Shabana Hussain v. Sullivan BuickCadillac-GMC Truck, Inc*., et al is irrelevant and plain wrong. Not only have courts found this defense as invalid, but those cases involved the TCPA. This claim is based on TX 302 and has nothing to do with the TCPA. The Defendant is grasping at straws while trying to muddy the waters. They employ the same tactic in falsely claiming that the Plaintiff never alleged the calls were not consented to, that an ATDS was used, or that the call were placed to his cell phones. He alleged all 3 in his complaint.

Under 301.001(5) of the Tex, Bus. & Comm. Code states that a solicitor (the Defendant) is, "a person who makes or causes to be made a consumer telephone call, including a call made by an automated dial announcing device." The Tx 302 states that, "prohibits sellers from engaging in telephone solicitation from a location in Texas or **to a purchaser located in Texas** unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made." "To a purchaser located in Texas" implies that this jurisdiction is to be exercised over out of State callers. Why would the law have been written that way if it was not intended to include out of state callers who might not be "at home" in Texas?

It is wrong for the Defendant to try and paint all the times the Plaintiff has dismissed a case with prejudice as being an adverse effect. These were dismissed because the Defendant was in the wrong and an agreement was reached. Out of the more than 50 lawsuits the Defendants has filed, only a few were dismissed in a positive outcome for the Defendant:

The RewardZone case was dismissed because the Court was too technologically inept to open a USB drive containing the evidence against the Defendant.

The complaint against the Defendant and Northcoast Warranty was dismissed, not on the merits, but based on a poor personal jurisdiction argument offered by the Plaintiff in this first

ever response to a motion to dismiss. If the Plaintiff had been represented by an attorney, the outcome would have been different. Regardless, *Morales v Sunpath* has withstood a motion to dismiss and is working its way through the court because the Plaintiff's claims that were dismissed in this case were valid.

The complaints against the NRSC and Tarrant County Hospital District were incorrectly dismissed because it was not "proven" that an ATDS was used in the initial pleading. However, without discovery, it is impossible to prove an ATDS was used on a text during the pleading phase. In both of those complaints, the courts shirked their duty by not allowing discovery that would have proved the Plaintiff's allegations of an ATDS being used.

**CONCLUSION**

The Texas 302 was written to stop companies like the Defendant from harassing consumers with unwanted calls and texts without the proper telemarketing license whether they are home in the state or not. That and the TCPA haven't really been effective though because companies like the Defendant are always searching for loopholes to escape liability and ignore the laws. Unfortunately, companies like the Defendant have found that outsourcing the calls to another and then hiding behind personal jurisdiction is a nice loophole to avoid any liability. But, in this instance, it can't work because of precedent and the available facts.

3 Texas District courts (including this one) have exercised personal jurisdiction over the Defendant in cases very similar, if not identical, to this one. Sunpath presents no reason why this Court should diverge from the 4 judges that exercised jurisdiction over them. Even without discovery, not only has Plaintiff pleaded sufficient allegations for the Court to exercise personal jurisdiction over Sunpath, but the Plaintiff has also presented evidence sufficient to establish personal jurisdiction over Sunpath.

For the reasons stated above, the Plaintiff asks the court to deny the Defendant's motion and order Discovery to reveal the relationships between the Defendant and its agents as was done in *Rogers, Baldridge, Cano*, and *Callier v Sunpath*.

Dated 4/11/2023 Respectfully submitted,

______________________________________

Lucas Horton
lukeduke365@yahoo.com
1202 Stratford Dr
Richardson, TX 75080
Tel: (214) 909-3341

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Answer to Defendant's Special Appearance was served, pursuant to Texas Rules of Civil Procedure 21 and 21a, via electronic service, on this the 17th of March 2023, to:

Jason Wagner
jwagner@jwagnerlaw.com
Attorney for the Defendant

______________________________________