IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS B. HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-631-E-BN |
| | § | |
| SUNPATH, LTD., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Lucas B. Horton filed this lawsuit *pro se* against Defendant SunPath, Ltd. in a state court in Dallas County, Texas, alleging violations of state law and a federal statute, the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 1-3.

SunPath responded by simultaneously filing a Special Appearance, arguing that the state court lacked jurisdiction over it, and an Original Answer, Subject to Defendant's Special Appearance. *See* Dkt. No. 1-9; Dkt. No. 1-11. Horton replied to the personal jurisdiction arguments. *See* Dkt. No. 1-7; Dkt. No. 1-13. SunPath then removed Horton's state action to federal court under 28 U.S.C. §§ 1331, 1332, 1441, and 1446. *See* Dkt. No. 1.

United States District Judge Ada Brown referred the removed action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

To address the personal jurisdiction defense raised in state court prior to removal, the Court ordered SunPath to reassert that defense in a motion under

Federal Rule of Civil Procedure 12(i), to allow the Court to consider it under the standards of Federal Rule of Civil Procedure 12(b)(2) after briefing by the parties and an evidentiary hearing. *See Horton v. SunPath, Ltd.*, No. 3:23-cv-631-E-BN, 2023 WL 2653386 (N.D. Tex. Mar. 27, 2023) [Dkt. No. 4].

SunPath filed its motion. *See* Dkt. Nos. 7 & 8. Horton responded. *See* Dkt. No. 9. SunPath replied. *See* Dkt. No. 10. And the Court held a hearing on June 1, 2023. *See* Dkt. Nos. 11-14.

But the Court suspended that hearing and granted Horton's construed motion for jurisdictional discovery to obtain through appropriate Federal Rule of Civil Procedure 34 requests any agreements between SunPath and the entities calling Horton in Texas. *See Horton v. SunPath, Ltd.*, No. 3:23-cv-631-E-BN, 2023 WL 3807043 (N.D. Tex. June 1, 2023) [Dkt. No. 16].

Discovery was produced, and supplemental briefing was filed. *See* Dkt. Nos. 18-28. In ordering supplemental briefing, the undersigned allowed each side an opportunity to explain whether an evidentiary hearing on the pending motion would still be beneficial. *See* Dkt. No. 24 at 2. And SunPath expressed its view that no hearing was required. *See* Dkt. No. 26 at 8.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny the motion to dismiss based on lack of personal jurisdiction under Rules 12(b)(2) and 12(i).

**Legal Standards**

"[A] federal district court's authority to assert personal jurisdiction in most

cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)).

Where a nonresident defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Even though Rule 12 motions filed after the defendant's responsive pleading are technically untimely, where the Rule 12(b)(2) defense has not been waived, *see* FED. R. CIV. P. 12(h), a court may still consider the defense under Rule 12(i) after the filing of the responsive pleading, *see* FED. R. CIV. P. 12(i) ("If a party so moves, any defense listed in Rule 12(b)(1)-(7) – whether made in a pleading or by motion – and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial."); *see, e.g.*, *Horton*, 2023 WL 2653386, at *1-*2 (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391 (3d ed. Apr. 2022 update) ("[F]ederal courts have allowed untimely [Rule 12(b)] motions if the defense has been previously included in the answer. In this context, the motion becomes tantamount to a motion for a pretrial hearing on the defense under Rule 12(i)." (footnotes omitted))).

This defense "exists to ensure fairness to defendants and to protect federalism." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir.

2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

> Consistent with these values,
>
> a defendant must have "fair warning" that his activities may subject him to another state's jurisdiction. That warning permits the defendant to "structure its primary conduct to lessen or avoid exposure to a given State's courts." The limits on specific jurisdiction also "ensure that States with little legitimate interest in a suit" cannot wrest that suit from "States more affected by the controversy."

*Id.* (quoting *Ford Motor*, 141 S. Ct. at 1025).

If the court rules on the defense without an evidentiary hearing, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). And the Court will "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Id.* (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam)).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

"As the Texas long-arm statute extends as far as constitutional due process allows, [federal courts] only consider the second step of the inquiry." *McFadin v.*

*Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Two types of personal jurisdiction may be exercised over a nonresident defendant: general and specific.

"General jurisdiction 'requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (quoting *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)).

"A court may assert general personal jurisdiction over foreign corporations 'when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

> There are two "paradigm" forums in which a corporate defendant is "at home." They are (1) the corporation's place of incorporation and (2) its principal place of business. Beyond those two "paradigm" forums, there may also be "exceptional cases" where the exercise of general jurisdiction is appropriate because a corporate defendant's operations are "so substantial and of such a nature as to render the corporation at home" in the forum State.

*Id.* (cleaned up).

"But it is 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'" *Id.* (quoting *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020)).

"Specific jurisdiction, on the other hand, demands a connection between the suit and the forum," *Zoch*, 810 F. App'x at 288 (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017)). Accordingly, it "focuses on the

relationship among the defendant, the forum, and the litigation." *Seville*, 53 F.4th at 895 (quoting *Walden*, 571 U.S. at 284).

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide*, 444 U.S. at 297)).

This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up). "That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden*, 571 U.S. at 285). "Rather, jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in

turn, *Burger King*, 471 U.S. at 475)).

## Analysis

Horton does not allege that SunPath is "at home" in Texas. So specific jurisdiction is the question before the Court – that is, whether SunPath made deliberate contact with Texas limited to Horton's current allegations.

And, because the Court considers this question without an evidentiary hearing, Horton's burden is to establish just a *prima facie* case. *See, e.g.*, *NetKnowledge Techs., L.L.C. v. Baron Capital V, Inc.*, No. 3:02-cv-2406-M, 2003 WL 23201333, at *2 (N.D. Tex. July 24, 2003); *see also Horton v. Palmer Admin. Servs., Inc.*, No. 3:20-cv-3526-X-BN, 2021 WL 8014654, at *4 (N.D. Tex. June 8, 2021) ("[A]t this stage, Horton's 'burden is to allege a plausible set of facts establishing jurisdiction.'" (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing, in turn, *Davis v. United States*, 597 F.3d 646, 649-50 (5th Cir. 2009)))).

Horton does not necessarily allege that SunPath itself called him. He alleges instead that "SunPath administers extended warranty services to consumers"; "relies on telemarketing services conducted by third parties"; and "enters into 'Call Center Marketing Agreements' ('CCMA') with third party marketers," through which SunPath "compensates these third-party marketers for selling their warranties on behalf of SunPath and vendors are required to act as fiduciaries toward SunPath." Dkt. No. 1-3 at 3 (cleaned up).

Consequently, Horton relies on an agency theory to establish SunPath's contacts with Texas. *See, e.g., id.* at 5 ("Even if SunPath did not make the calls, they

have Agency Liability because the actions of their agents can be imputed to those of the Defendant." (cleaned up)).

In support of this theory, Horton further alleges:

> For the violations identified below, Defendant SunPath is vicariously liable for the unlawful calls, as it contracted with various companies like National Car Cure (whom SunPath had a CCMA at the time the calls were made to the Plaintiff as shown by the previously cited *Rogers v National Car Cure and SunPath Ltd*). SunPath financially benefitted from these companies' unlawful calls and directed these companies violative conduct in hopes of creating more sales of their warranties.
> Plaintiff was called on his residential cellphone ending in 3341 by (580) 258-2097 on 8/9/2019, by (346) 299-4568 on 8/10/2019, by (310) 596-1434 on 8/13/2019, and by (585) 270-4881 on 8/15/2019. All calls featured a generic pre-recorded message saying the factory warranty was about to expire and that it was your last chance to buy an extended one. On 8/22/2019, he was called by (346) 346-6053 and purchased a warranty that was billed and administered by SunPath. The caller is unknown.
> Plaintiff was called on his residential cellphone ending in 3341 by (214) 433-8727 on 8/27/2020, (214) 909-8181 on 9/5/2019, (214) 542-6369 on 9/20/2019 and 9/25/2019. All calls featured a pre-recorded message offering an extended car warranty as my factory coverage had or was about to expire. Plaintiff purchased a SunPath Horizon Diamond New warranty on the 9/25 call sold by National Car Cure, but administered by SunPath.
> …
> Plaintiff was called on his residential cellphone ending in 3341 by (254) 272-2909 on 3/2/2022, (956) 305-6598 on 3/4/2022, and by (512) 957-8272 on 3/16/2022. Plaintiff completed a dummy sale and purchased a warranty from Auto Defender Warranty with contract number HZL022508 that was administered by the Defendant on 3/16/2022.
> Plaintiff believes he was called additional times by SunPath's agents, but he either didn't answer the phone or he did not record the calls. Discovery would prove this.

Dkt. No. 1-3 at 7-8 (cleaned up).

"The actions of an agent may establish minimum contacts over a principal." *McFadin*, 587 F.3d at 761. "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13

> (2014) (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Under Texas law, in order to prove agency, "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008). An agency relationship must be affirmatively established and not presumed. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998).

*Horton*, 2021 WL 982344, at *4; accord *Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 768 (S.D. Tex. 2022).

By alleging that he purchased warranties from SunPath because of calls that he received from third parties in Texas, Horton has carried his burden to allege a plausible set of facts supporting jurisdiction and thus shown a *prima facie* case that the Court has jurisdiction over SunPath, requiring that SunPath's motion for dismissal on its personal jurisdiction defense be denied.

This conclusion is supported by a recent decision from another district court in this circuit. And the conclusion is further supported by documents produced by SunPath in this litigation that exhibit SunPath's control over the telemarketers reaching into Texas – which also requires that the Court not apply res judicata as to the question of personal jurisdiction.

First, the recent decision. There, the court initially found that the plaintiff's allegation that "he purchased a vehicle warranty from [the defendant] as the result of a call received from either [the defendant] or from a third party at [the defendant's] direction" was sufficient for the purpose of a *prima facie* case "to allow the Court to infer that implied actual authority exists between Palmer, the purported principal, and Vehicle Services, the purported agent." *Johnson v. Palmer Admin. Servs., Inc.*,

- 9 -

No. 6:22-CV-00121-JCB-KNM, 2022 WL 17546957, at *5 (E.D. Tex. Oct. 20, 2022) (citing *Horton*, 2021 WL 8014654, at *6), *rec. accepted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022).

> Based on this principal-agent relationship, the court then found that
>
> > Palmer purposely directed its activities to the Plaintiff in the state of Texas through the acts of Vehicle Services or a John Doe hired by Vehicle Services with the phone-calls at issue placed to Texas residents, satisfying the first prong of the inquiry. *See Monkton Ins. Servs., Ltd.*, 768 F.3d at 433. Plaintiff's causes of action for violations of the TCPA, TCPA regulations, and the [Texas Business and Commerce Code], arise out of said purported phone calls to the Plaintiff, satisfying the second prong of the inquiry. *Id.* And the exercise of personal jurisdiction over Palmer in this case would be fair and reasonable as Palmer financially benefitted through the alleged acts of its purported agent in making the calls to Plaintiff. *Id.*; *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state."); *See also Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 554 (S.D. Tex. 2021) (held that personal jurisdiction existed over defendant wherever defendant's robocalls reached consumers when robocalls were made at random because defendant had purposefully availed itself of that state's laws). Plaintiff has sufficiently shown that Palmer is subject to specific personal jurisdiction, and accordingly, the Court recommends denying Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

*Id.* at *6.

Next, the documents produced in this case and res judicata, which SunPath argues requires that the Court grant its motion. *See* Dkt. No. 26 at 5-6.

> At the outset of this proceeding, the undersigned observed that,
>
> > two years ago, another judge of this Court dismissed a similar lawsuit filed by Horton against SunPath, granting SunPath's Rule 12(b)(2) motion. *See Horton v. SunPath, Ltd.*, No. 3:20-cv-1884-B-BH, 2021 WL 982344 (N.D Tex. Feb. 16, 2021), *rec. accepted*, 2021 WL 977065 (N.D. Tex. Mar. 15, 2021). So Horton must show why res judicata does not apply to the jurisdictional determination now before the Court.
> > "Although a jurisdictional ruling is technically not

> > an adjudication on the merits, '[i]t has long been the rule that principles of res judicata apply to jurisdictional determinations – both subject matter and personal.'" Therefore, "the dismissal of a complaint for lack of jurisdiction ... adjudicate[s] the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims." [But d]ismissals for lack of jurisdiction do not "preclude a party from later litigating the same claim, provided that the specific defect has been corrected."
>
> *New World Int'l*, 2017 WL 1078525 (quoting *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 469 (5th Cir. 2013), then *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); citation omitted).

*Horton*, 2023 WL 2653386, at *2 (citation modified).

Dismissing the 2020 suit between Horton and SunPath in this district, the court observed that Horton did not allege that SunPath directed the purported agent, Northcoast, "to take any action with respect to Texas, or that it assigned any tasks to Northcoast concerning Texas, and that [SunPath] controlled or had the means to control such a task." *Horton*, 2021 WL 982344, at *4 (citation omitted). And the court concluded that,

> for an agency relationship to exist, Defendant must have had the authority to assign tasks and control the means and details of the process by which the third-party company responsible for calling Plaintiff in Texas conducts its business. Apart from Defendant being listed as the administrator of the warranty Northcoast sold him, Plaintiff does not allege or point to any evidence showing that Defendant played any role in contacting him by phone. His conclusory allegation that Defendant acted in an agency relationship with telemarketing companies to contact him in Texas to sell warranties does not suffice to impute Northcoast's actions to Defendant under an agency theory.

*Id.* (citations omitted).

But that case was not the last round between SunPath and a plaintiff filing suit against it in this forum.

- 11 -

In subsequent litigation in Texas, jurisdictional facts specific to SunPath were further fleshed out. For example, in *Rogers* – like here – SunPath's CCMAs were produced. *See Rogers*, 636 F. Supp. 3d at 765-67. And there, the court relied on the CCMAs to distinguish prior cases, holding that the CCMAs supported finding an agency relationship between SunPath and the telemarketers. *See id.* at 771 ("[T]hese CCMA requirements distinguish this case from [prior cases], where the plaintiffs offered only conclusory allegations that there was an agency relationship or that the calls were made on behalf of the defendants. Although the Garcia Declaration controverts Plaintiff's allegation that SunPath exercises control over NCC's telemarketing, the court is persuaded that the CCMA supports finding an agency relationship.").

The undersigned therefore finds that relying on res judicata as to personal jurisdiction would be inappropriate here. Horton now offers more than conclusory allegations to show an agency relationship and thus has corrected the specific defect underlying the dismissal of his 2020 lawsuit against SunPath in this district. *See, e.g.*, *Rolls-Royce v. Heros, Inc.*, 576 F. Supp. 2d 765, 777 (N.D. Tex. 2008) (Where "[t]he dismissal of the complaint … results solely from the lack of jurisdiction of the court and is, therefore, not an adjudication on the merits of the cause of action," "such a dismissal does not prejudice the right of the plaintiff to file another complaint when and if it appears that the court may obtain jurisdiction of the person of the defendant." (quoting *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 875 (3d Cir. 1944))).

## Recommendation

The Court should deny the motion to dismiss based on lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2) and 12(i) [Dkt. No. 7].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 6, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE